

**Entered on Docket
February 24, 2010**

_____
Hon. Gregg W. Zive
United States Bankruptcy Judge

STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
CHRIS D. NICHOLS, ESQ.
Nevada Bar No. 003123
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, Nevada 89509
Telephone: (775) 786-7600
Facsimile: (775) 786-7764

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No. BK-10-50215 gwz<br>(Chapter 11) |
| FIRSTGOLD CORP, | |
| Debtor. | **INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING UNDER 11 U.S.C. §364(b) AND F.R.B.P. 4001(c)** |
| _____/ | Hrg. DATE:  February 10, 2010<br>Hrg. TIME:   2:00 PM |

On February 10, 2010, at 2:00 p.m., the Court heard argument on shortened time, on the MOTION FOR INTERIM AND FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING UNDER 11 U.S.C. §364(b) and F.R.B.P. 4001(c) ("Motion"), filed on February 4, 2010, [Docket No. 21], by FIRSTGOLD CORP., a Delaware corporation, Debtor and Debtor-In-Possession in the above Chapter 11 case ("Debtor"), by and

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1

through its attorney STEPHEN R. HARRIS, ESQ., of BELDING, HARRIS & PETRONI, LTD.; The Court scheduled the hearing on shortened time for February 10, 2010 at 2:00 p.m., CHRIS D. NICHOLS, ESQ., of BELDING, HARRIS & PETRONI, LTD., appeared on behalf of the Debtor, and the Debtor's representative, TERRY LYNCH, also appeared by telephone; REW R. GOODENOW, ESQ., of PARSONS, BEHLE & LATIMER, in person, and attorney DANIEL H. REISS, ESQ., of LEVENE, NEALE, BENDER, RANKIN & BRILL, LLP, by telephone, appeared on behalf of secured creditors PLATINUM LONG TERM GROWTH LLC and LAKEWOOD GROUP, LLC; WILLIAM B. COSSITT, ESQ., appeared on behalf of the Office of the United States Trustee.

The Court having considered the Motion and the OPPOSITION TO THE EX PARTE MOTION FOR ORDER SHORTENING TIME; DECLARATION OF MARK MUELLER filed February 8, 2010, [Docket No. 26] secured creditors PLATINUM LONG TERM GROWTH LLC and LAKEWOOD GROUP, LLC; and the Court having reviewed all the remaining papers and pleadings on file herein, and the Court having heard oral argument for and against the relief requested, and good cause appearing:

**IT IS HEREBY ORDERED** that the Debtor is authorized to borrow monies not to exceed One Hundred Seventy-Five Thousand and No/Dollars ($175,000.00) by the issuance of Gold Notes ("Notes") and Loan Agreements, in the form attached hereto and incorporated herewith as **Exhibit "A"**, which Notes shall be designated as unsecured Promissory Notes, not secured by any collateral, with maturity date of twelve (12) months from the date of issuance. Interest accruing thereon at the rate of twelve percent (12%) per annum on each, the remaining terms consisting of certain gold rights issued to the holders of the Notes as set forth in **Exhibit "A"** hereto, which shall only be exercised after all administrative, secured, priority and unsecured creditors of the Debtor are paid in full. Such Notes shall be entitled to administrative expense status equal to all other administrative

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

2

claims pursuant to 11 U.S.C. §364(b) subject to any objections which may be appropriate and to the availability of funds to satisfy administrative claims. The terms of this Order shall control, in case of any inconsistency between this Order and any Note or other financing document. Debtor shall also have the right to call the Notes and convert them to stock in Debtor as more particularly described in **Exhibit "A"** hereto. The Notes shall not contain any specific event of default other than for non-payment upon their maturity, shall not be subject to any conditions for funding, other than the entry of this Order. The proceeds shall be available to finance Debtor's ongoing business operations pursuant to the cash requirements budget as attached and incorporated as Exhibit "B" to the Motion.

**IT IS FURTHER ORDERED** that the Court shall conduct a final hearing on March 5, 2010 at 10:00 A.M., to determine whether or not the original loan request of Three Hundred Fifty Thousand and No/Dollars ($350,000.00) by issuance of gold notes by the Debtor to unnamed Lenders, on the terms and conditions as set forth above, should be approved, conditioned on the Debtor filing and serving Notice of this final hearing, in addition to the Motion, on all creditors by mail forthwith.

**IT IS FURTHER ORDERED** that any Points and Authorities in Support of or in Opposition to the Motion shall be filed and served upon the Debtor and Debtor's counsel, the attorney's for secured creditors PLATINUM LONG TERM GROWTH LLC and LAKEWOOD GROUP, LLC, and all other parties in interest on or before March 2, 2010.

**IT IS FURTHER ORDERED** that upon entry of this Order the Debtor may issue the notes or receive and distribute any funds from issuance of gold notes in the amount of One Hundred Seventy-Five Thousand and No/100 Dollars ($175,000.00), and

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

3

1  **IT IS FURTHER ORDERED** that no further notes may be issued or financing obtained
2  until further approval of this Court following the final hearing on Debtor's Motion.

4  Respectfully submitted by:

5  STEPHEN R. HARRIS, ESQ.
6  BELDING, HARRIS & PETRONI, LTD.
   417 W. Plumb Lane
7  Reno, NV 89509

8  _____
9  Attorney for Debtor
   FIRSTGOLD CORP.

11 (Approved)/Disapproved this 22 day of      Approved/Disapproved this ___ day of
12 February, 2010.                             February, 2010.

13 PARSONS, BEHLE & LATIMER                    OFFICE OF U.S. TRUSTEE
   50 West Liberty Street, Suite 750           300 Booth Street
14 Reno, NV 89501                              Reno, NV 89509
                                               /S/ William B. Cossitt
15 By_____           2010.02.23 09:02:53 -08'00'
16    REW R. GOODENOW, ESQ., of                WILLIAM B. COSSITT, ESQ.
      PARSONS, BEHLE & LATIMER, on
17    behalf of secured creditors PLATINUM
18    LONG TERM GROWTH LLC and
      LAKEWOOD GROUP, LLC.

#####

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

4

# EXHIBIT "A"

# EXHIBIT "A"

# LOAN AGREEMENT

Made as of _____, 2010

Between

**FIRSTGOLD CORP.**
as Borrower

and

_____
as Lender

# LOAN AGREEMENT

THIS LOAN AGREEMENT made as of the _____ day of _____, 2010,

BETWEEN:

    FIRSTGOLD CORP., a corporation incorporated pursuant to the laws of the State of Delaware,

    (hereinafter referred to as the "**Borrower**"),

    - and -

    _____

    (hereinafter referred to as the "**Lender**"),

WHEREAS the Lender has agreed to loan to the Borrower the sum of $_____ USD, subject to the provisions of this Agreement;

NOW THEREFORE THIS AGREEMENT WITNESSETH that, in consideration of the covenants and agreements contained herein and for other good and valuable consideration (the receipt and adequacy whereof are hereby acknowledged), the parties hereto agree as follows:

1. **INTERPRETATION**

1.1   In this Agreement:

    (a)   "**Affiliate**" has the meaning ascribed thereto in the *Business Corporations Act* (Ontario);

    (b)   "**Agreement**", "**hereto**", "**hereof**", "**hereby**", "**hereunder**" and similar expressions refer to this loan agreement and not to any particular section or other portion hereof, and include any and every instrument supplemental or ancillary hereto or in the implementation hereof;

    (c)   "**Arm's Length**" has the meaning ascribed to it under the *Income Tax Act* (Canada);

    (d)   "**Corporate Distribution**" means the amount of:

        (i)   any dividend or other distribution based on the issued and outstanding shares in the capital of the Borrower;

        (ii)   the purchase, redemption or retirement price of any issued and outstanding shares in the capital of the Borrower redeemed, purchased or otherwise retired by the Borrower;

        (iii)   any management or consulting fee or bonus to any of the shareholders of the Borrower or any person related to any such shareholders, except normal remuneration payable to employees of the Borrower; or

        (iv)    any payment on account of any principal or interest on any loans or advances owing at any time by the Borrower to any of its Affiliates or to its shareholders;

(e)    "**Date of Advance**" means the date on which the Advance is made under Section 2.1 hereof;

(f)    "**Event of Default**" means any of the events specified in Section 6.1 hereof;

(g)    "**generally accepted accounting principles**" or "**GAAP**" means the accounting principles recommended by the Canadian Institute of Chartered Accountants as provided in the "CICA Handbook", as the same may be amended, replaced or restated from time to time;

(h)    "**Indebtedness**" includes all principal, interest and interest on overdue interest owing pursuant to the provisions of this Agreement;

(i)    "**Loan**" means the total principal amount advanced and outstanding at any time hereunder, together with accrued and unpaid interest thereon, if any;

(j)    "**Promissory Note**" means the promissory note issued by the Borrower in favour of the Lender pursuant to Section 2.5 hereof;

(k)    "**Subsidiary**" has the meaning ascribed thereto in the *Business Corporations Act* (Ontario); and

(l)    "**Third Party**" means a third party dealing at Arm's Length with the Borrower and the Covenantor.

## 2. PRINCIPAL AMOUNT, REPAYMENT AND INTEREST

All amounts expressed herein are in U.S. currency unless otherwise specified. The Lender hereby agrees to lend to the Borrower, upon the terms hereinafter set forth and subject to compliance by the Borrower with the terms and conditions hereof, an amount of $_____ (the "**Advance**"), such Advance to occur simultaneously with the execution of this Agreement by all parties.

### 2.1 Principal and Interest

Interest shall be payable, at a rate per annum which is equal to twelve percent (12%) (the "**Interest Rate**"), calculated annually, not in advance, from the Date of Advance, on the principal amount and on overdue interest, if any, from time to time remaining unpaid, payable as set out on the payment dates in Section 2.4 hereof.

### 2.2 Interest

Interest as aforesaid shall be paid on the principal amount advanced, both before and after maturity, both before and after the occurrence of an Event of Default and after judgement computed from the Date of Advance.

### 2.3 Principal and Interest Payment

Subject to Section 2.4, the principal and interest payments in respect of the Advance shall be payable upon the one (1) year anniversary of the Date of Advance, and otherwise in accordance

with the terms contained herein as well as the terms contained in the Promissory Note. It is expressly acknowledged that subject to regulatory approval, the Lender shall have the right, at its option, to convert the whole or any part of the Advance and accrued interest into either common shares of the Corporation at a price of $0.036 per common share or such lower price if Firstgold issues Shares at a lower price at any time up until December 31, 2012.

**Promissory Note**

The Advance shall be evidenced by a promissory note in favour of the Lender on the terms set out in Sections 2.2 and 2.3 hereof and be subject to Section 2.4 hereof (the "**Promissory Note**").

2.4 **Prepayment**

The Borrower, upon ten (10) day's written notice to the Lender, may prepay any amount in respect of the principal amount of the Loan at any time or times during the term of this Loan without notice, bonus or penalty, and, in the event of such prepayment, the principal and interest payment schedule set out in Section 2.4 shall be adjusted accordingly

2.5 **Priority**

To secure Borrower's obligations, the Loan shall be entitled to administrative expense claim status equal to all other allowed bankruptcy administrative claims pursuant to 11 U.S.C. §364(b) of the United States Bankruptcy Code, in In re FirstGold Corp, Case No. 10-50215, United States Bankruptcy Court, District of Nevada.

3. **ADVANCES**

3.1 The Lender shall be under no obligation to make the Advance until the Borrower shall have provided the Lender with:

    (a) a duly executed copy of this Agreement;

    (b) a duly executed Promissory Note for the Advance;

    (c) any additional documents which the Lender may reasonably require.

3.2 The obligation of the Lender to make the Loan is further subject to and conditional upon the following conditions being satisfied:

    (a) the Lender shall have received satisfactory reports on the financial position of the Borrower as it may specify time to time, but in any event no more than quarterly;

    (b) the representations and warranties of the Borrower set out herein shall be true and correct; and

    (c) The United States Bankruptcy Court has entered an order approving Borrower's borrowing under the terms of this Agreement.

3.3 The terms and conditions set forth herein are inserted for the sole benefit of the Lender and may be waived prior to advancing without prejudicing any further rights of the Lender to assert such terms and conditions upon the occurrence of an Event of Default.

4. **REPRESENTATIONS AND WARRANTIES**

4.1 The Borrower represents and warrants to the Lender, and acknowledges that the Lender is relying on such representations and warranties in entering into this Agreement and in making the advance hereunder, as follows:

   (a) Status

   The Borrower has been duly incorporated or amalgamated and organized and is a valid and subsisting corporation in good standing under the laws of its jurisdiction of incorporation and has full capacity and power to carry on its business as the same is presently carried out and to own and lease its property.

   (b) Power, Authority

   Subject to the United States Bankruptcy Court approval, the Borrower has the necessary power and authority to borrow the monies hereunder and has the necessary power and authority to enter into, execute, deliver and perform this Agreement.

   (c) Necessary Action

   All necessary steps and proceedings have been taken to authorize the entering into, delivery and performance of the Agreement.

   (d) Violation of Other Instruments and Authorization

   The entering into of this Agreement and any other agreement additional or collateral hereto does not conflict and will not conflict with, and does not result, and will not result, in a breach or violation of, or constitute a default under, its Articles of Incorporation or Amalgamation, constating documents or the by-laws or any other covenants contained in any agreement to which it is a party or by which it is bound or to which it is subject and do not require the consent or approval of any person save as provided to the Lender.

   (e) Valid Obligations

   This Agreement constitutes valid and enforceable obligations of the Borrower enforceable in accordance with their terms.

   (f) Location, Ownership and Description of Assets

      (i) All of the assets of the Borrower are situate in the State of Nevada and State of California; and

      (ii) The Borrower has good title to all its property and assets subject to existing encumbrances.

(g) Insolvency Proceedings

The Borrower is presently a debtor-in-possession in a Chapter 11 bankruptcy pending in the United States Bankruptcy Court for the District of Nevada, captioned as In re FirstGold Corp., Case No. 10-50215 ("Bankruptcy Case").

(h) Compliance with Laws

To the best of its knowledge, the Borrower is not in breach of any by-laws, laws, statutes, regulations, rules or orders, municipal or otherwise, relating in any way to the operations of its business.

4.2 **Survival of Representations Warranties and Covenants**

The covenants, agreements, representations and warranties set forth in this Agreement and in any certificate or other document delivered hereunder shall, notwithstanding any investigation made by the Lender or its counsel or any other representative of the Lender or the making of any advance hereunder, shall continue in full force and effect until repayment in full of all of the Indebtedness.

5. **COVENANTS**

5.1 **Positive Covenants**

The Borrower hereby covenants and agrees with the Lender as follows so long as any of the Indebtedness remains unpaid:

(a) To Repay Indebtedness

The Borrower shall well, duly and punctually pay or cause to be paid to the Lender the Indebtedness at the dates, times and places and in the manner mentioned herein.

(b) Payment of Costs and Expenses

The Borrower shall pay or reimburse the Lender and its agent for all reasonable costs, charges and expenses (including legal fees and disbursements on a solicitor and his own client basis) of or incurred by the Lender in connection with the recovery or enforcement of repayment of the Indebtedness or any part thereof, and any amount not so paid shall bear interest at a rate equal to the Interest Rate, and shall be payable out of any funds coming into the possession of the Lender in priority to the Indebtedness.

(c) Grant to Lender of Right To Purchase Gold

The Borrower shall, no later than two years from the date hereof, but as soon as Borrower is permitted to do so under applicable law, sell to the Lender at the Lender's sole option physical gold at a price of $500 per ounce for every $150 advanced by Lender to Borrower under the terms of this Agreement. In the alternative, at the Lender's option, Borrower shall remit to the Lender by bank draft or bank wire any positive difference between the opening US NYMEX spot gold price on the date following the request and [have] $500. Notwithstanding the foregoing, however, the Lender shall not [any] right to purchase gold or demand payment under the terms of this subparagraph 5.1 (c), nor shall

RRC

the Borrower comply with any demand by the Lender to purchase gold or for payment until and unless the Borrower has paid in full (1) all of its secured and unsecured debt due and owing as of January 27, 2010 (the "pre-petition debt"), plus interest, fees and charges that may accrue with respect to that pre-petition debt, and (2) all such additional secured and unsecured debt as may be incurred in connection with its Bankruptcy Case.

(l)    Regulatory Approval for Conversion Rights

The Borrower shall use its commercially reasonable best efforts to obtain regulatory approval to permit the conversion rights contemplated in subparagraph 2.3 hereof.

6.    **DEFAULT AND ENFORCEMENT**

6.1    **Events of Default**

Each and every one of the following shall be an event of default (an "**Event of Default**") under this Agreement:

(a)    if the Borrower makes default in payment of the Loan (or any portion thereof), interest or costs associated with the Loan as and when the same becomes due under any provision hereof, provided that the Borrower shall have a one-time opportunity to remedy any such payment default by making such payment within five (5) days following its due date;

(b)    if the Borrower shall neglect to carry out, observe or comply with any covenant or condition hereunder, other than covenants to pay indebtedness, in any material respect which materiality may be determined by the Lender in its absolute discretion (acting reasonably and in good faith), provided that the Borrower shall have five (5) days following the date on which such covenant or condition was to be performed, satisfied or fulfilled to make good such default before the Borrower shall be in default hereunder;

6.2    **Acceleration on Default**

Upon the occurrence of an Event of Default, the Lender may in addition to any other rights and remedies provided for herein or a law or in equity, declare the whole of the Indebtedness to become immediately due and payable and the same shall forthwith become immediately due and payable and the Borrower shall forthwith pay to the Lender the Indebtedness together with subsequent interest thereon at the rate provided for herein from the date of such declaration until payment is received by the Lender.

6.3    **Indemnification**

In addition to any other agreement or obligation hereunder, the Borrower agrees to indemnify and save harmless the Lender, and each of its officers, directors, employees and agents, from and against all indebtedness, liabilities, obligations, losses, damages, actions, suits, proceedings, judgments, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed upon, incurred or suffered by the Lender relating in any way to the Loan, including, without limitation, any breach of any representation or warranty or any non performance or non fulfilment of any covenant or agreement made or given by the Borrower hereunder.

6.4  **Waiver of Default**

The Lender may at any time waive in writing any Event of Default which may have occurred provided that no such waiver shall extend to or be taken in any manner whatsoever to effect any subsequent Event of Default or the rights and remedies resulting therefrom.

6.5  **Remedies Cumulative**

Each of the remedies available to the Lender hereunder is entitled to be a separate remedy and in no way is a limitation on any one or more of the other remedies otherwise available to the Lender and the rights and remedies herein expressly specified are cumulative and not exclusive. The Lender may in its sole discretion exercise any and all of the rights of powers, remedies and recourses available under this Agreement or any other remedy available to it, and such rights, powers and remedies and recourses may be exercised concurrently or individually to the necessity of any election.

6.6  **Remedies Not Prejudiced by Delay**

No delay or omission of the Lender to exercise any remedy shall impair any such remedy or shall be construed as a waiver of any default hereunder or acquiescence therein.

7.  **MISCELLANEOUS**

7.1  **Notices**

Notice hereunder shall be deemed to have effectively been given five (5) days after mailing when sent by registered mail or the day following delivery if sent by personal delivery to the following address or such other address as shall be notified in writing from time to time by the parties herein:

To the Borrower at:

    1055 Cornell Ave., P.O. Box 6,
    Lovelock, NV
    T2P 2V6

    Attention:     Jim Kluber

To the Lender at:

    _____
    _____
    _____

7.2  **Enurement and Assignment**

The Agreement shall enure to the benefit of and be binding upon the parties hereto and their respective permitted heirs, administrators, successors and assigns including any successors by way of amalgamation. This Agreement may be assigned by the Lender, in which event the Borrower shall attorn in all respects to such assignment and the assignee thereof. This Agreement may not be assigned by the Borrower.

7.3　**Jurisdiction**

This Agreement and all certificates and other documents delivered to the Lender shall be construed and interpreted in accordance with the laws of the Province of Ontario.

7.4　**Counterparts**

This Agreement may be signed in counterparts and each counterpart shall constitute an original document and the counterparts, taken together, shall constitute one and the same instrument.

7.5　**Facsimile**

Execution and delivery of a facsimile transmission of this Agreement shall constitute, for purposes of this Agreement, delivery of an executed original and shall be binding upon the party whose signature appears on the transmitted copy. Any party so executing this Agreement hereby undertakes to originally execute and deliver to the other party hereto a copy of this Agreement as soon as possible after execution by facsimile.

**IN WITNESS WHEREOF** the parties have hereunto affixed their corporate seal under the hands of their proper signing officers duly authorized in that behalf on the date first written above.

FIRSTGOLD CORP.

Per: _[signature]_

Terry Lynch CEO
I have the authority to bind the Borrower


Per: _____

_____

I have the authority to bind the Lender

## UNSECURED PROMISSORY NOTE

_____, 2010                                                                                          US$_____

FOR VALUE RECEIVED the undersigned FIRSTGOLD CORP. ("Borrower") promises to pay to or to the order of _____, with an address of _____, the principal amount of US$_____ together with interest thereon at the rate of twelve percent (12%) per annum until paid, in accordance with the provisions and terms and conditions of the loan agreement entered into between the undersigned, as borrower, and the Lender, made as of the date hereof (the "**Loan Agreement**").

Payments received shall be applied firstly in payment of unpaid accrued interest and the balance, if any, in reduction of principal.

This Promissory Note and the unpaid principal balance and unpaid all accrued interest thereon shall be due in full one (1) year from the date hereof.

Subject to the provisions of the Loan Agreement, the undersigned shall be entitled to prepay any amount in respect of principal at any time or times during the term of the loan without notice, bonus or penalty.

The undersigned acknowledges that this Promissory Note has been issued by the undersigned for business purposes within the meaning of the *Limitations Act, 2002* (Ontario), and the undersigned agrees that any limitation period applicable to this Promissory Note (other than the ultimate limitation period provided for in Section 15 of the said Act) is suspended and shall not apply to this Promissory Note or the obligations of the undersigned hereunder.

Upon the occurrence of an Event of Default as defined in the Loan Agreement, the entire unpaid balance of the principal amount, accrued interest and all other indebtedness owing pursuant to the Loan Agreement shall, at the option of the Lender, become immediately due and payable without notice or demand and the undersigned covenants to pay interest thereon and on subsequent overdue interest at the rates set out in the Loan Agreement, both before and after judgment, until payment in full.

The covenant to pay interest hereunder shall not merge on the taking of a judgment or judgments with respect to any of the obligations herein stipulated for.

**PRESENTMENT FOR PAYMENT AND PROTEST WAIVED.**

DATED:_____, 2010.

**FIRSTGOLD CORP.**

Per: Terry Lunch, CEO
I have authority to bind the Borrower


Per:_____
_____
I have authority to bind the Lender

**January 2010**
**Term Sheet - Firstgold Corp.**

ALL AMOUNTS IN U.S. CURRENCY

| | |
|---|---|
| Issuer: | Firstgold Corp. |
| Securities: | Exchangeable promissory notes (each, a "Note") shall be issued by Firstgold Corp. ("FGD") on or about January 19th, 2010 for an amount of up to $350,000 in the aggregate, pursuant to the terms of a loan agreement, providing, *inter alia*, for a term of one year, interest on the principal amount at the rate of 12% per annum, payable in arrears at maturity. Subject to regulatory and United States Bankruptcy Court approval, the promissory note shall be exchangeable at the option of the holder into either (i) common shares of Firstgold Corp. at a price of $0.036 cents per share or such other lower price if Firstgold should accept or issue equity at anytime before December 31, 2012 at a price lower than $0.036 per share.<br><br>In addition, FGD shall grant to the purchaser for two (2) years after the date of the Note, the right to purchase from FGD's available gold production one troy ounce of gold from FGD at a price of $500 per ounce for every $150 principal amount of Note purchased, subject to FGD First having paid in full all of the allowed administrative, secured, unsecured and priority allowed creditor claims in the United States Bankruptcy Court case of In re Firstgold Corp., <u>Case No. 10-50215, pending in the United States Bankruptcy Court for the District of Nevada</u>. |
| Right to Call: | FGD has the right to call at any time the promissory note and the gold rights. By paying 4.33 times the original promissory note amount in FGD shares at $0.036 per share with a maximum profit of $500 per ounce. |
| Total Proceeds: | $350,000 |
| Use of Proceeds: | The net proceeds shall be used to enable FGD to pay for operational costs and to fund a potential Chapter 11 Bankruptcy process. |
| Maturity Date: | December 31, 2010 |
| Closing Date: | On or before April 1, 2010. |
| Registration: | The Private Placement of Notes is to accredited investors, does not contemplate Registration Rights and will be subject to applicable statutory hold periods. |
| Expiration of Terms: | The terms and conditions offered herein will expire on January 19th, 2010. |

Agreed to and accepted this ___ day of _____, 2010 on behalf of _____ by:

_____
Signature

_____
Please print Name & Title