Rew R. Goodenow (SBN 3722)  
**PARSONS BEHLE & LATIMER**  
50 West Liberty Street  
Suite 750  
Reno, NV 89501  
Tel: 775-323-1601  
Fax: 775-348-7250  
RGoodenow@parsonsbehle.com

Daniel H. Reiss (*Pro Hac Vice*)  
**LEVENE, NEALE, BENDER, RANKIN & BRILL, LLP**  
10250 Constellation Blvd, Suite 1700  
Los Angeles, CA 90067  
Tel:   310-229-1234  
Fax:   310-229-1244  
dhr@lnbrb.com

Attorneys for Secured Creditors Platinum Long Term Growth LLC and Lakewood Group, LLC

Efiled: April 27, 2010

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re

FIRSTGOLD CORP.,

            Debtor.

Case No.  BK-N-10-50215- GWZ

Chapter 11

**STIPULATION AND ORDER REGARDING TERMINATION OF THE AUTOMATIC STAY**

Date:    April 20, 2010  
Time:    2:00 p.m.

This Stipulation and Order is entered by and among Firstgold Corp., a Delaware corporation and the debtor in possession herein (the "Debtor"), and certain of its lenders, Platinum Long Term Growth LLC ("Platinum") and Lakewood Group, LLC ("Lakewood" and together with Platinum, the "Lenders"). This Stipulation is made with reference to the following facts, which are agreed to by the undersigned parties (the "Parties"):

## RECITALS

A. On January 27, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, Debtor has operated its business and managed its property as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

### Lender Claims

C. Pursuant to that certain "Note and Warrant Purchase Agreement" between the Lenders and the Debtor dated August 7, 2008 and documents related thereto (the "Loan Documents"),[1] Platinum and Lakewood were owed as of the Petition Date no less that $15,510,496 and $3,847,466.17, respectively in principal, interest, charges and fees, and in the aggregate $19,357,961.72 (the "Loan Indebtedness"). Interest, fees and costs continue to accrue on the Loan Indebtedness in accordance with the Loan Documents. The Loan Indebtedness does not include as yet certain unliquidated, accrued and unpaid fees, charges, interest or penalties.

D. As security for the payment of all amounts due under the Loan Documents, the Debtor granted to the Lenders, inter alia, a first priority security interest in all tangible real and

---

[1] Certain of the Loan Documents are annexed as Exhibits "G" through "J" to the Declaration Of Mark Mueller In Support Of Motion By Platinum Long Term Growth LLC And The Lakewood Group, LLC To Convert Case To Chapter 7, Or Alternatively, For Relief From The Automatic Stay, docket number __ on the Court's docket in this case.

personal property assets and intangible assets of the Debtor (the "Lender Collateral"), subject only to prior valid and perfected liens existing as of August 7, 2008, if any (the "Pre-Existing Liens"), as a matter of applicable non-bankruptcy law (the "Lenders' Lien").

E.     The Lenders do not consent to the use of cash collateral except upon the terms and conditions of this Stipulation.

F.     On March 25, 2010, the Lenders filed the Motion By Platinum Long Term Growth LLC And The Lakewood Group, LLC To Convert Case To Chapter 7, Or Alternatively, For Relief From The Automatic Stay and supporting declarations (the "Relief From Stay Motion"). The hearing on the Relief From Stay Motion was held on April 20, 2010 in the above-entitled Court (the "Stay Hearing"). Among other things, the Lenders sought relief from the automatic stay under 11 U.S.C. § 362(d).

G.     Prior to the Stay Hearing, the Parties reached an agreement in principle that: (1) the Lenders would be irrevocably granted immediate relief from automatic stay under 11 U.S.C. § 362 to pursue their rights to enforce the Lender's Lien and other claims under the Loan Documents; (2) current management of the Debtor's operating assets shall be replaced; and (3) the Debtor and all former and current insiders and affiliates shall be enjoined from seeking to vacate, reverse, or modify this Court's order granting the Lender relief from automatic stay or seek to reimpose the automatic stay. This agreement in principle was read into the record at the Stay Hearing and constituted the ruling of the Court pending the submission of this Stipulation.

H.     The Parties agree that the terms of this Stipulation are fair and commercially reasonable, reflect Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

**STIPULATION**

1.     <u>Allowance of Secured Claim and Bankruptcy Code Section 506(a) and (c) Waiver.</u> This Stipulation, as approved by the Court's order (the "Approval Order"), shall be a conclusive and binding determination on all parties (x) of the amount of the Loan Indebtedness as stated above, (y) that Lenders' claims are allowed secured claims in the amount of the Loan

3

Indebtedness plus such other post-petition interest, fees and charges under 11 U.S.C. § 502, and (z) the Lenders' Lien in the Lender Collateral has been duly perfected and are in all respects valid and enforceable first priority security interests and liens, subject only to the Pre-Existing Liens, and not subject to any claim or challenge under Bankruptcy Code Sections 506(a), 506(c) and 552(b).

2. <u>Waiver</u>. Debtor waives, on behalf of itself and this bankruptcy estate, any and all rights to object to or contest the amount of the Loan Indebtedness or the amount, validity, extent, priority, perfection, or enforceability of the Lenders' Lien in the Lender Collateral and any rights to surcharge the Lender Collateral pursuant to 11 U.S.C. § 506(c). The Debtor further agrees that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens, subject only to the Pre-Existing Liens.

3. <u>Relief from Stay</u>. The automatic stay imposed by Section 362 of the Bankruptcy Code shall be, and by the Approval Order is, irrevocably vacated and modified, effective upon entry of the Approval Order, insofar as necessary to permit the Lenders to enforce all of their rights under the Loan Documents and pursuant to applicable law.

4. <u>New Management</u>. The Debtor hereby designates Mr. Eric Klepfer as sole management of the Debtor's business operations, with all rights, powers and authorities over such operations and the tangible and intangible assets of the Debtor directly or indirectly relating thereto (the "Operations Manager"), including but not limited to: (1) all real property; (2) all equipment and other personal property; (3) all contracts, excluding directors and officers insurance coverage contracts; (4) all permits; and (5) all bank accounts and cash deposits, including the Cash Collateral Accounts described below ((1) through (5) referred to collectively as the "Operating Assets"). By approval of this Stipulation, the Operations Manager shall have full power and authority over the Operating Assets and is hereby authorized to execute any and all documents and court pleadings relating to the care, maintenance, preservation and disposition of the Operating Assets, including, but not limited to: (1) asset purchase and sale agreements and related court filings; (2) lease agreements; (3) acquiring, renewing, and preserving any existing or future permits relating to the Operating Assets as required by the Bureau of Land

4

Management, the Nevada Department of Environmental Protection, or such other governmental or regulatory authority (each a "Governmental Authority"); (4) any documents relating to compliance with statutory or regulatory requirements relating, either directly or indirectly, to the Operating Assets; (5) any documents and court pleadings relating to obtaining post-petition financing relating to the Operating Assets; (6) any documents to obtain all existing technical and financial data associated with the Operating Assets and authorizing the necessary consultants and professionals to create, formulate, and prepare such reports, tests, projections and other data associated with the Operating Assets; and (7) and other similar agreements or documents. The power and authority granted to the Operations Manager hereunder shall be terminated upon the earlier to occur of (1) dismissal of this case; (2) conversion to a chapter 7 proceeding; (3) the transfer, by sale or otherwise, of all or substantially all of the Operating Assets to a third party; (4) the effective date of a chapter 11 plan of reorganization; or (5) such other date as determined by the Lenders in their sole discretion. The Operations Manager, and no other officer, director or employee, shall have sole power and authority on behalf of the Debtor to sell, use, lease or otherwise dispose of any tangible or intangible asset of the estate associated with the Operating Assets. Mr. Klepfer's qualifications have been previously submitted to the Court in connection with, among other things, Mr. Klepfer's testimony filed in support of the Stay Motion.[2] Any subsequent Operations Manager may appointed by the Lenders in their sole discretion by filing with this Court a Notice of Appointment of Operations Manager without need for further order of this Court. Notwithstanding the foregoing, nothing herein shall be construed to vest the Operations Manager with power, control or authority over the Debtor's corporate entity or structure, including the use or disposition of the stock of the Debtor or any of its federal or state tax attributes. Without limiting the generality of any of the foregoing grants, the Operations Manager shall have express authority to open and maintain one or more debtor in possession bank

---

[2] Declaration Of Eric Klepfer In Support Of Motion By Platinum Long Term Growth LLC And The Lakewood Group, LLC To Convert Case To Chapter 7, Or Alternatively, For Relief From The Automatic Stay, filed on March 25, 2010, docket number 98 in this bankruptcy case.

accounts (the "Cash Collateral Accounts"), over which he shall have sole signatory and withdrawal authority, and from which operating expenses relating to the Operating Assets may be paid, subject to the Lenders' approval as described herein. All (i) revenues generated from operations of the Operating Assets, (ii) proceeds from the Operating Assets and (iii) except with respect to any funds borrowed from third-parties with this Court's approval after the Petition Date (the "DIP Borrowings"), all monies held in any existing bank or other deposit account of the Debtor (including, without limitation, all accounts listed or disclosed on the Debtor's most recent Monthly Operating Report), or any other or future revenues (including payments of accounts receivable) shall, in each case, be deemed to constitute cash collateral of the Lenders pursuant to 11 U.S.C. §363 and with respect to which the Lenders shall have a perfected first priority security interest. In furtherance of the foregoing, funds in any account described in clause (iii) of the proceeding sentence shall be immediately transferred by the Debtor or the Operations Manager, as applicable, to the Cash Collateral Account, except with respect to the DIP Borrowings. Further, the Debtor shall take all necessary action to permit the Operations Manager to have full, exclusive and unfettered access to, and control over, any such accounts to the extent such accounts constitute Operating Assets. In no event shall the Operations Manager make any payment from, or withdrawal from, the Cash Collateral Account without the prior written authorization of the Senior Lenders.

5. <u>Future Advances</u>. The parties agree that it may become necessary for the Lenders to provide post-petition financing for the purpose of caring for, operating, maintaining, preserving, and/or disposing of some or all of the Operating Assets (the "Operations Financing"). To the extent that the Lenders, in their sole discretion, offer to extend such financing, the Operations Manager shall have the sole authority to administer such funds in accordance with his business judgment. Lenders shall have the option of directing any proceeds of the Operations Financing directly or indirectly to any vendor or service provider relating to any Operating Assets; however, any such advances shall be treated post-petition financing pursuant to 11 U.S.C. § 364(d) and shall be secured by a lien to the same extent, priority, validity and as the Lenders' Lien.

6. <u>No Waiver of Deficiency Claim</u>. The Lenders do not waive their right to seek priority treatment of any deficiency claim with respect to any pre-petition or post-petition advances.

7. <u>Section 363 Sale</u>. All or part of the Operating Assets shall be sold by the Debtor, as follows:

    a. Lenders shall negotiate with the Operations Manager a mutually agreeable asset purchase agreement (the "APA"), whereby the Lenders or their designee shall be the buyer of the Operating Assets designated in the APA (the "APA Assets") free and clear of liens, interests and encumbrances under 11 U.S.C. § 363(f).

    b. The purchase price for the APA assets shall be paid, in whole or in part, by a credit bid by the Lenders of all or a portion of the Loan Indebtedness or the Operations Financing.

    c. Lenders shall have the right to credit bid up to the total amount of the Loan Indebtedness plus the Operations Financing and shall have all rights of a good faith purchaser under 11 U.S.C. 363(k).

    d. The APA shall be executed by the Operations Manager, authorized hereunder, and by the Lenders no later than June 4, 2010.

    e. The Debtor shall file a motion to approve bidding procedures no later than June 4, 2010. An order approving bidding procedures shall be entered no later than June 15, 2010, subject to the Court's availability.

    f. A motion to approve the sale of the Operating Assets under the APA pursuant to 11 U.S.C. § 363(f) shall be filed by the Debtor no later than June 18, 2010.

    g. An order approving the sale of the Operating Assets free and clear of liens, encumbrances and interests under 11 U.S.C. § 363(f) shall be entered no later than July 20, 2010 (the "Sale Approval Order").

    h. The sale of Operating Assets pursuant to the Sale Approval Order shall close no later than July 27, 2010.

7

i. All of the foregoing dates and deadlines may be extended or waived by the Lenders in their sole discretion in writing by filing a notice of such extension or waiver with the Court. Such extensions or waivers shall be effective without need for further order of the Court or agreement by the Debtor; however, the Lenders may seek an order from the Court in this regard by way of motion or stipulation with the Debtor.

8. <u>Preservation of Rights</u>. If any or all of the provisions of this Stipulation or the Approval Order are, at any time, modified, vacated or stayed, such stay, modification or vacation shall not affect the validity, extent, priority and enforceability of any lien, priority, or other benefit conferred under this Stipulation and the Approval Order prior to such stay, modification or vacation. Nothing herein shall be construed to limit the Lenders' ability to enforce all rights and remedies under the Loan Documents, including, but not limited to whether or not the Debtor satisfies all of the terms of paragraph 7 with respect to a sale under 11 U.S.C. § 363.

9. <u>No Amendment</u>. Except as otherwise provided herein, this Stipulation and the Approval Order shall not be amended without the express written consent of the Lenders, which shall be at their sole discretion.

10. <u>No Further Action Required.</u> The Approval Order and this Stipulation shall be sufficient and conclusive evidence of the validity, extent, enforceability and perfection of the Lenders' Lien pursuant to the Loan Documents in the Lender Collateral and in the Replacement Liens, whether or not the Lenders elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; provided, however, upon the request of the Lenders, Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens, and the Lenders may, in their sole discretion, but shall not be required to, file a certified copy of the Approval Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of their liens and security interests. The failure of the Debtor to

8

execute any such other documentation shall in no way affect the validity, perfection or priority of the Lenders' Lien in the Lender Collateral and the Replacement Liens granted hereunder.

11. **Binding Effect**. This Stipulation and Approval Order shall be binding on all parties interest in this case, including, but not limited to, the Debtor and any successors thereto, any chapter 11 or chapter 7 trustee that is appointed or elected in this case, and the Official Committee of Unsecured Creditors.

12. **No Competing Liens**. Debtor shall not grant liens on or security interests in the Lender Collateral or any other of property of the Debtor's estate not otherwise encumbered by the Lenders' liens to any party pursuant to Section 364 of the Bankruptcy Code or otherwise.

13. **Reservation of Rights**. The Parties reserves their rights to seek modification of the Approval Order by way of an agreement in writing; provided, however, that the Lenders have the sole right to seek a modification of the Approval Order upon motion to the Court.

14. **Injunction**. The Debtor, any current or former insiders or affiliates, its successors, the Committee, and any chapter 11 or chapter 7 trustee of this estate, or any other party on behalf of or derivative of the Debtor's estate, shall be enjoined under the Approval Order from initiating any action, legal or otherwise, whether alone or in concert with any third party, to hinder, delay, stay or enjoin the Lenders from enforcing their rights under the Loan Documents, including seeking to reimpose the automatic stay in this case against the Lenders.

15. **No Control**. The Lenders shall not be deemed to be in control of the operations of Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of Debtor, notwithstanding the terms in this Stipulation or the Approval Order.

16. **No Third Party Beneficiary**. No rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

17. **No Stay of Enforcement**. The rights and obligations of the parties under the Approval Order shall be effective and enforceable as of the date of the Stay Hearing. The

1  Approval Order shall be deemed effective immediately and, for the avoidance of doubt, Federal
2  Rule of Bankruptcy Procedure 4001(a)(3) shall not apply hereto and is hereby waived. If any or
3  all of the provisions of the Approval Order are reversed, modified, vacated or stayed, such
4  reversal, modification, vacatur or stay shall not affect (i) the validity, extent, priority or
5  enforceability of any obligations incurred prior to the actual receipt of written notice by the
6  Lenders of the effective date of such reversal, modification, vacatur or stay or (ii) the validity,
7  extent or enforceability of the liens and claims granted hereunder.

8      18.    **Further Assurances**. The Parties agree to execute such further documents as are
9  necessary to carry out the terms of this Stipulation.

10 Dated: April 27, 2010                    PLATINUM LONG TERM GROWTH LLC
11                                          And LAKEWOOD GROUP, LLC

13                                          By _____
14                                             Rew R. Goodenow (SBN 3722)
                                               Parsons Behle & Latimer
15                                             and
                                               Daniel H. Reiss (CA SBN 150573)
16                                             Levene, Neale, Bender, Rankin
                                               & Brill L.L.P.
17                                             Counsel to Platinum Long Term Growth
                                               LLC and Lakewood Group, LLC

19 Dated: April __, 2010                    FIRSTGOLD CORP.

22                                          By: _____
                                               Stephen R. Harris (SBN 1463)
23                                             Belding, Harris & Petroni, Ltd.
                                               Counsel to Firstgold Corp.

25 Dated: April __, 2010                    By: _____
26                                             Terrence M. Lynch, Chief Executive
                                               Officer

10

1  Approval Order shall be deemed effective immediately and, for the avoidance of doubt, Federal
2  Rule of Bankruptcy Procedure 4001(a)(3) shall not apply hereto and is hereby waived. If any or
3  all of the provisions of the Approval Order are reversed, modified, vacated or stayed, such
4  reversal, modification, vacatur or stay shall not affect (i) the validity, extent, priority or
5  enforceability of any obligations incurred prior to the actual receipt of written notice by the
6  Lenders of the effective date of such reversal, modification, vacatur or stay or (ii) the validity,
7  extent or enforceability of the liens and claims granted hereunder.

8      18.    <u>Further Assurances</u>.  The Parties agree to execute such further documents as are
9  necessary to carry out the terms of this Stipulation.

10  Dated: April __, 2010          PLATINUM LONG TERM GROWTH LLC
11                               And LAKEWOOD GROUP, LLC

13                               By: _____
14                                  Rew R. Goodenow (SBN 3722)
                                Parsons Behle & Latimer
15                                  and
                                Daniel H. Reiss (CA SBN 150573)
16                                  Levene, Neale, Bender, Rankin
                                  & Brill L.L.P.
17                                  Counsel to Platinum Long Term Growth
                                LLC and Lakewood Group, LLC

19  Dated: April 27, 2010          FIRSTGOLD CORP.

22                               By: _____
23                                  Stephen R. Harris (SBN 1463)
                                Belding, Harris & Petroni, Ltd.
                                Counsel to Firstgold Corp.

25  Dated: April __, 2010          By: _____
26                                  Terrence M. Lynch, Chief Executive
                                Officer

1 Approval Order shall be deemed effective immediately and, for the avoidance of doubt, Federal
2 Rule of Bankruptcy Procedure 4001(a)(3) shall not apply hereto and is hereby waived. If any or
3 all of the provisions of the Approval Order are reversed, modified, vacated or stayed, such
4 reversal, modification, vacatur or stay shall not affect (i) the validity, extent, priority or
5 enforceability of any obligations incurred prior to the actual receipt of written notice by the
6 Lenders of the effective date of such reversal, modification, vacatur or stay or (ii) the validity,
7 extent or enforceability of the liens and claims granted hereunder.

8    18.    <u>Further Assurances</u>. The Parties agree to execute such further documents as are
9 necessary to carry out the terms of this Stipulation.

Dated: April __, 2010    PLATINUM LONG TERM GROWTH LLC
And LAKEWOOD GROUP, LLC

By: _____
Rew R. Goodenow (SBN 3722)
Parsons Behle & Latimer
and
Daniel H. Reiss (CA SBN 150573)
Levene, Neale, Bender, Rankin
& Brill L.L.P.
Counsel to Platinum Long Term Growth
LLC and Lakewood Group, LLC

Dated: April __, 2010    FIRSTGOLD CORP.

By: _____
Stephen R. Harris (SBN 1463)
Belding, Harris & Petroni, Ltd.
Counsel to Firstgold Corp.

Dated: April 27, 2010    By: _/s/ Terry Lynch_____
Terrence M. Lynch, Chief Executive
Officer

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2010, I caused to be filed and served through the Bankruptcy Court's ECF system, a true and correct copy of the foregoing, STIPULATION AND ORDER REGARDING TERMINATION OF THE AUTOMATIC STAY to:

Stephen R. Harris
steve@renolaw.biz
Attorney for Debtor FirstGold Corp.

Office of the United States Trustee
C. Clifton Young Federal Bldg
300 Booth Street, Rm. 2129
Reno, Nevada 89509
USTPRegion17.RE.ECF@usdoj.gov


DAVID A. COLVIN    dcolvin@marquisaurbach.com,
mwalters@marquisaurbach.com;kgallegos@marquisaurbach.com;
tszostek@marquisaurbach.com

Daniel H. Reiss
dhr@lnbrb.com

NICOLE M. HARVEY
 nicole@nicoleharvey.com

ROBERT R. KINAS    rkinas@swlaw.com,
jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;lvdocket@mindspring.com;vcampbell@swlaw.com;nbaig@swlaw.com;tmachnich@swlaw.com

TIMOTHY A LUKAS
ecflukast@hollandhart.com

LAURY MILES MACAULEY
lmacauley@lrlaw.com, rmaples@lrlaw.com

17909.003/4827-3015-4245.1

Case 10-50215-gwz    Doc 127    Entered 04/27/10 16:26:51    Page 14 of 14

1. I also hereby certify that on this 27 day of April, 2010, I served a copy of the foregoing STIPULATION AND ORDER REGARDING TERMINATION FO THE AUTOMATIC STAY via U.S. Mail, at Reno, Nevada, in a sealed envelope with first-class postage fully prepaid, addressed as follows:

DAVID J COOK
POB 270
SAN FRANCISCO, CA 94104

_____
Employee of Parsons Behle & Latimer

- 2 -

17909.003/4827-3015-4245.1